# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph O. Cuddy,                          :
                        Petitioner        :
                                          :
           v.                             :    No. 2355 C.D. 2014
                                          :    Submitted: July 17, 2015
Unemployment Compensation                 :
Board of Review,                          :
                        Respondent        :

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: September 3, 2015**


Joseph O. Cuddy (Claimant) petitions for review of an order of the
Unemployment Compensation Board of Review (Board) that held him ineligible
for unemployment compensation (UC) benefits under Section 402(b) of the Law
(Law)[1] on the basis he voluntarily quit his employment.  Claimant contends the
Board's critical findings are inconsistent and fail to support the Board's legal
conclusion.  Claimant also asserts the Board erred in concluding he voluntarily quit
his employment with All American Pest Control (Employer) where he never
verbalized an intention to quit and only left Employer's premises after Employer's
owner, Richard Nauss (Owner), directed him to do so.  For the reasons that follow,
we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S.
§802(b).  Section 402(b) of the Law provides "[a]n employe shall be ineligible for compensation
for any week … [i]n which his unemployment is due to voluntarily leaving work without cause
of a necessitous and compelling nature …."  43 P.S. §802(b).

# I. Background

Claimant worked for Employer as a service technician from March 2012 until his last day of work on December 23, 2013. His final rate of pay was $10 per hour plus 10 percent commission.

Employer provided Claimant with complete uniforms to wear at work. In October 2013, Employer informed Claimant that he must wear his entire uniform, including his belt. However, Employer does allow employees to wear a sweatshirt underneath their uniforms.

On Claimant's last day of work, Employer's office staff informed Owner that Claimant was not in uniform. Owner informed Claimant he must put on his uniform jacket with Employer's name on it. Claimant became upset because of his conversation with Employer's office staff.

Claimant left, put gas in his truck and returned to Employer's premises to load the truck. He was not wearing his uniform jacket. Owner informed Claimant that he was still not in uniform. Claimant became angry and handed Owner his truck keys and company cell phone.

Owner then advised Claimant that he did not want to do that and told him that he should just let it go. Claimant then threw the keys and cell phone on a table. After further discussion, Owner, using an expletive, told Claimant to get off the property.

2

Thereafter, Claimant applied for UC benefits. The local service center issued a notice of determination denying Claimant benefits under Section 402(b). In so doing, the service center noted Claimant initiated the separation and did not show a necessitous and compelling reason for quitting his employment. Claimant appealed.

Both parties appeared at a referee's hearing at which both Claimant, accompanied by a certified intern representative (Claimant's Representative), and Employer, presented testimony. Following the hearing, the referee issued an opinion and order affirming the service center's denial of UC benefits under Section 402(b) of the Law. In explaining his decision, the referee observed that Claimant initiated the separation when he voluntarily turned in his cell phone and keys. This set in motion the sequence of events that ended with Owner's expletive-laced instructions to get off the property. See Referee's Op., 3/6/14, at 2-3.

Next, Claimant filed an appeal with the Board four days beyond the expiration of the 15-day appeal period. At Claimant's request, the Board remanded to the referee to take further evidence concerning the timeliness of Claimant's appeal. Ultimately, the Board deemed Claimant's appeal timely filed under the circumstances[2] and addressed the merits. See Bd. Op., 9/4/14, at 2-3.

---

[2] During the 15-day appeal period, Claimant's Representative's mother became critically ill and needed emergency surgery, which required Claimant's Representative to return to his hometown on the morning he intended to file Claimant's appeal, which was the day before appeal period expired. See Bd. Op., 9/4/14, Findings of Fact Nos. 14-24.

With respect to the merits, the Board found that on Claimant's last day of employment, Employer's staff member Joni Leese (Employee Leese) informed Claimant, who was wearing a hooded sweatshirt rather than his uniform jacket, that he was out of uniform. F.F. No. 5; Referee's Hr'g, Notes of Testimony (N.T.), 2/25/14, at 24-25. Shortly thereafter, Owner also told Claimant he must put on his uniform jacket. F.F. No. 6; N.T. at 17. Claimant became upset as a result of his conversations with Employer's staff about wearing his entire uniform, including the jacket. F.F. No. 7; N.T. at 23-24.

Claimant left Employer's premises and put gas in the truck. When Claimant returned to a house on property shared by Employer's premises, he was still wearing the sweatshirt rather than his uniform jacket. F.F. No. 8; N.T. at 17-18. Owner again advised Claimant that he was not in uniform. F.F. No. 9; N.T. at 18. Claimant then handed his keys and cell phone to Owner. F.F. No. 10; N.T. at 13. Owner then asked Claimant not to do that. Justin Wright, the homeowner and a friend of both parties, also asked Claimant not to do that, to just drop it and move on. F.F. No. 11; N.T. at 13; 20-21.

Claimant, however, threw the keys and cell phone on the table. F.F. No. 12; N.T. at 18, 20-21. Employer picked up the keys and walked out of the house. N.T. at 18. Claimant followed Owner outside and told him he was the best dressed man there. Id. At that point, Owner told Claimant to "get the fuck off my property." F.F. No. 13; N.T. at 18.

4

In finding Claimant ineligible for benefits under Section 402(b), the Board reasoned (with emphasis added):

> Based on the record before the Board, the Board concludes that [Claimant] has failed to establish a necessitous and compelling reason to quit his employment. [Employer] is credible that [Claimant] was being instructed that he was not dressed properly. During that conversation, [Claimant] handed [Employer] his keys and cellphone. <u>When [Employer] said he should just put it behind him [Claimant] threw the cell phone and keys on the table. This credible testimony established that [Claimant] quit. Being unhappy because he was being instructed that he was not dressed properly fails to establish a necessitous and compelling reason to quit</u>. Accordingly, Claimant is ineligible for benefits under Section 402(b) of the Law.

Bd. Op. at 3.

Having deemed Claimant ineligible under Section 402(b), the Board affirmed the referee's decision and denied benefits. Claimant's Representative requested reconsideration, which the Board granted. The Board then vacated its decision and permitted Claimant's Representative to obtain a copy of the transcript and file a brief. Following a review of Claimant's brief, the Board issued a December 2014 order reinstating its September 2014 decision and order. Claimant petitions for review.[3]

---

[3] Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. <u>Wise v. Unemployment Comp. Bd. of Review</u>, 111 A.3d 1256 (Pa. Cmwlth. 2015). Substantial evidence is evidence which a reasonable mind would accept as adequate to support a conclusion. <u>Procyson v. Unemployment Comp. Bd. of Review</u>, 4 A.3d 1124 (Pa. Cmwlth. 2010).

5

## II. Discussion

Claimant presents two primary issues for our review. First, Claimant contends the Board's Findings of Fact Nos. 10 and 12 are inconsistent, directly contradict each other, and fail to support the Board's conclusion. Second, Claimant asserts the Board erred in determining he voluntarily quit where he never verbalized an intention to quit and only left Employer's premises after Employer directed him to do so.

### A. Claimant's Burden to Prove Discharge

It is the claimant's burden to prove his separation from employment was a discharge. Middletown Twp. v. Unemployment Comp. Bd. of Review, 40 A.3d 217 (Pa. Cmwlth. 2012). Whether a claimant's separation from employment constitutes a voluntary quit is a question of law subject to our plenary review. Wise v. Unemployment Comp. Bd. of Review, 111 A.3d 1256 (Pa. Cmwlth. 2015). In making this determination, we look at the totality of the circumstances surrounding the separation. Id. A voluntary termination requires a finding that the claimant had a conscious intention to leave employment. Id.

### B. Inconsistent Findings

Claimant first contends Finding of Fact No. 10, which indicates he peacefully offered Employer his keys and cell phone out of confusion as to what Employer wanted, is inconsistent with Finding of Fact No 12, which indicates Claimant violently threw his keys and cell phone on the table and walked out. Claimant asserts this Court may not choose between contradictory findings. Rather, if the Court deems the Board's findings inconsistent, a remand is required

for further explanation. See Fisher v. Unemployment Comp. Bd. of Review, 696 A.2d 895 (Pa. Cmwlth. 1997) (it is beyond Commonwealth Court's scope of review to choose between contradictory findings of fact); Radio Corp. of Am. v. Unemployment Comp. Bd. of Review, 257 A.2d 65 (Pa. Super. 1969) (where the Board's findings are inconsistent with each other and the conclusions of law, a remand for further proceedings is required).

Here, Claimant essentially argues Finding of Fact No. 10 could be construed as indicating Claimant thought Employer fired him, and he responded by calmly surrendering the keys and cell phone. On the other hand, Finding of Fact No. 12, which indicates Claimant angrily threw the keys and phone on the table after being asked to put the confrontation behind him, establishes Claimant voluntarily quit. Because these two findings cannot be reconciled, Claimant urges that we remand this matter to the Board for further explanation.

Discerning no inconsistency in the findings, we disagree. In UC cases, the Board is the ultimate fact-finder and is empowered to resolve all issues of witness credibility, conflicting evidence and evidentiary weight. Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review, 949 A.2d 338 (Pa. Cmwlth. 2008). Also, it is irrelevant whether the record includes evidence that would support findings other than those made by the Board; the proper inquiry is whether the evidence supports the findings actually made. Id. Further, the party prevailing below is entitled to the benefit of all reasonable inferences drawn from the evidence. Id.

The Board found credible testimony that when Owner informed Claimant he was still not in uniform, Claimant handed Owner the keys and phone. F.F. Nos. 9-10; N.T. at 20-21. At that point, Owner asked Claimant to reconsider his decision and let the incident go. Claimant then threw the keys and phone on the table. F.F. Nos. 11-12; N.T. at 20-21. Specifically, Owner testified:

> Okay. That's when he – when we started talking about his appearance. <u>He hands me his cell phone and keys. I ask him you don't want to do that.</u> Justin Wright also said Joe you really don't want to do this. Then we ….

> * * * *

> Then we went back and forth saying you don't want to do this. <u>Well he asked me what do you want. I said Joe let's drop it, let's go on. So then he started getting a little more irate and that's when he threw the keys and the cell phone on the table</u>.

> * * * *

> In the house. That's when I picked them up and kept them and walked out of the house.

> * * * *

> That's when he came out of the house and kept on badgering me – not me badgering him. I had no reason to. And that's when I told him to get the fuck off my property and that's when he turned to [Justin Wright] and says can I use your cell phone to call my wife for a ride.

N.T. at 20-21.

Given the Board's credibility determinations, and viewing Owner's testimony in a light most favorable to Employer as the prevailing party, we discern

no inconsistency in the Board's findings. After Claimant initially handed Owner the keys and phone, Owner asked Claimant to reconsider his decision and to just let the incident go. F.F. No. 11. Claimant, however, became more irate and threw the keys and phone on the table. F.F. No. 12. Although these findings do not specify whether Claimant lost and then regained possession of the keys and phone after initially handing them to Owner, we believe a reasonable inference may be drawn from Owner's testimony that Claimant initially offered Owner the keys and phone, but remained in possession of them until he threw them on the table.[4] Ductmate. Therefore, we see no need for a remand on that issue.

## C. Conscious Intention to Quit

Claimant also contends the Board erred in determining he voluntarily quit where he intended to continue his employment and never verbalized an intention to quit. Further, Claimant asserts he only left Employer's premises after Owner directed him to do so. In short, Claimant asserts he had no conscious intention to leave his employment. Therefore, the Board erred in determining he voluntarily quit. See Roberts v. Unemployment Comp. Bd. of Review, 432 A.2d 646 (Pa. Cmwlth. 1981) (absent a conscious intention by a claimant to leave his employment, a finding of a voluntary quit is precluded).

In particular, Claimant argues the Board erred in determining the act of transferring possession of his work keys and cell phone shows an affirmative intention to quit. Rather, Claimant asserts the totality of the circumstances

---

[4] Before the referee, Claimant testified: "Well I held my keys and phone out and I said do you want these." Notes of Testimony, 2/25/14, at 9.

9

establish that Claimant intended to continue his employment, but Employer fired him.

To that end, Claimant argues his case is analogous to <u>Procyson v. Unemployment Compensation Board of Review</u>, 4 A.3d 1124 (Pa. Cmwlth. 2010). In <u>Procyson</u>, the claimant worked for her employer as a pharmacy technician until she sustained non-work injuries. The claimant missed five weeks of work and then returned to work part-time usually for 10-13 hours per week. On a Friday, after receiving clearance to return to work full-time, the claimant requested a full-time work schedule. However, the claimant's supervisor told her that she would have to check with the pharmacist and the employer's president. The supervisor also told the claimant that the pharmacist told her that the claimant's brother, working as the claimant's temporary replacement, did a better job.

The claimant then became very upset, gathered her things, called the pharmacist "two-faced," and left. <u>Procyson</u>, 4 A.3d at 1126. The pharmacist followed the claimant through the building and out into the parking lot, telling the claimant "don't leave like this." <u>Id.</u>

When the claimant reported for her next scheduled shift, the employer's president told her she was fired and that she should never come back. The claimant applied for UC benefits, which the referee and the Board denied under Section 402(b) on the basis that the claimant voluntarily quit without a necessitous and compelling cause.

10

On appeal, this Court reversed, noting that the totality of the circumstances did not support the Board's conclusion that the claimant voluntarily quit. Although the claimant left work without completing her shift, she never said "I quit." Procyson, 4 A.3d at 1129. "[S]uch conduct, does not, in itself, manifest a conscious intention to quit." Id. Further the claimant left on a Friday and returned for her next shift on Tuesday. We reasoned that "[b]y reporting to work at her next shift, [the claimant] acted to preserve the employment relationship." Id.

Here, Claimant asserts he similarly had no conscious intention to quit his employment. Although Claimant left work without permission after a heated exchange, such action, in and of itself, did not manifest a conscious intention to quit. Procyson. To that end, Claimant never verbally stated that he quit. Id. Likewise, Claimant contends here that his act of transferring the keys and cell phone did not establish a conscious intention to quit his employment.

Claimant also asserts his situation is similar to that in Roberts, where the claimant, a licensed practical nurse on vacation, received a registered letter from his supervisor containing correspondence on a pink piece of paper. The letter, titled "Official Reprimand Form," summarized past disciplinary action against the claimant and concluded by stating: "you will never function at Kane Hospital under the job description of a Licensed L.P.N. …" Roberts, 432 A.2d at 647. Believing he was terminated, the claimant did not return to work after vacation. The Board determined the employer had only reprimanded the claimant, and that he voluntarily quit by not returning to work.

11

In reversing, this Court determined the claimant reasonably believed that the "pink notice," which included the language "you will no longer function … under the job description of a Licensed L.P.N." supported the claimant's reasonable belief that his employer fired him. Id. As such, we determined the claimant lacked the conscious intention to leave his employment. Id.

In light of Procyson and Roberts, Claimant contends Employer's hostile conversation in the present case regarding his uniform, which evolved into an argument, and ended with Owner telling Claimant to get off his property, gave Claimant no real choice but to leave the premises. Consequently, Claimant asserts the record does not support a determination that he had a conscious intention to voluntarily quit his employment.

We disagree. Here, the totality of the circumstances surrounding Claimant's separation from employment support the Board's determination that Claimant's conduct exhibited a conscious intention to leave his employment. "A voluntary termination is not limited to a formal or even an express resignation; it can be inferred from the employee's conduct." Wise, 111 A.3d at 1263. An employee who leaves his employment without notifying the employer when or if he is planning to return, may be found to have voluntarily quit. Id.

In the present case, unlike the situation in either Procyson or Roberts, when Claimant initially offered the keys and cell phone to Owner, Owner responded by asking Claimant to reconsider his decision and to let the incident go. F.F. No. 11; N.T. at 20-21. In particular, when Claimant asked Owner, "what do

you want," Owner replied: "Joe let's drop it, let's go on." N.T. at 21. Claimant, however, "started getting a little more irate and that's when he threw the keys and cell phone on the table." Id. As such, we reject Claimant's contention that Employer gave Claimant no real choice but to quit.

Further, the Board could infer from such conduct that Claimant evidenced a conscious intention to terminate his employment. See Wise (claimant's failure to respond as promised to a justified demotion, despite the employer's repeated requests for her response in order to prepare the next work schedule, exhibited a conscious intention to leave her employment).

Therefore, we discern no error in the Board's determination that Claimant voluntarily quit his employment. Although Claimant may have become upset with Employer's insistence that he wear his complete uniform at all times, this did not provide him with necessitous and compelling cause to voluntarily terminate employment. See Tom Tobin Wholesale v. Unemployment Comp. Bd. of Review, 600 A.2d 680, 683 (Pa. Cmwlth. 1991) ("mere dissatisfaction with the employer's policies or procedures alone is not cause of a necessitous and compelling nature to voluntarily terminate employment"); Ann Kearney Astolfi DMD PC v. Unemployment Comp. Bd. of Review, 995 A.2d 1286 (Pa. Cmwlth. 2010) (the claimant's resentment of the employer's policies and her personality conflicts with coworkers did not constitute a necessitous and compelling cause for an employee to voluntarily terminate employment).

## III. Conclusion

Despite Employer's requests that Claimant not leave his employment over the uniform incident, Claimant threw down his keys and cell phone. Given the totality of the circumstances, the Board could infer from Claimant's conduct (intemperate return of Employer's property) that he had a conscious intention to terminate his employment. <u>Wise</u>. Moreover, Claimant's refusal of Employer's request to simply let the incident go indicates Claimant failed to make a reasonable attempt to preserve his employment. <u>Solar Innovations, Inc. v. Unemployment Comp. Bd. of Review</u>, 38 A.3d 1051 (Pa. Cmwlth. 2012). Therefore, we see no error in the Board's determination that Claimant voluntarily terminated his employment without a necessitous and compelling cause. Accordingly, we affirm the Board's denial of benefits under Section 402(b) of the Law.

_____

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph O. Cuddy,  :
                Petitioner  :
                  :
        v.  :   No. 2355 C.D. 2014
                  :
Unemployment Compensation  :
Board of Review,  :
             Respondent  :

## **O R D E R**

**AND NOW**, this 3rd day of September, 2015, for the reasons stated in the foregoing opinion, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

 

_____
ROBERT SIMPSON, Judge